**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - X

 UNITED STATES OF AMERICA              :

     - against -                       :   S10 09 Cr. 195 (GBD)

 JONATHAN FELIZ, et al.,               :

                    Defendants.        :

- - - - - - - - - - - - - - - - - - - - X

GOVERNMENT'S MEMORANDUM IN RESPONSE TO DEFENDANT
MARCO RODRIGUEZ'S SUPPLEMENTAL MEMORANDUM OF LAW
IN SUPPORT OF HIS PRETRIAL MOTIONS

                                      PREET BHARARA
                                      United States Attorney
                                      Southern District of New York
                                      Attorney for the United States of
                                                America

Nola B. Heller
Michael D. Maimin
Assistant United States Attorneys
    - Of Counsel -

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -  X
 UNITED STATES OF AMERICA            :
     - against -                     :   S10 09 Cr. 195 (GBD)
 JONATHAN FELIZ, et al.,             :
                    Defendants.      :
- - - - - - - - - - - - - - - - - -  X
```

**GOVERNMENT'S MEMORANDUM IN RESPONSE TO DEFENDANT
MARCO RODRIGUEZ'S SUPPLEMENTAL MEMORANDUM
OF LAW IN SUPPORT OF HIS PRETRIAL MOTIONS**

The Government respectfully submits this memorandum in response to defendant Marco Rodriguez's supplemental memorandum of law in support of his pretrial motions in the above-captioned case. Rodriguez's motions consist of requests to suppress Title III wiretap evidence in this case, based on claims related to the "alternative investigative procedures" requirements, and, alternatively or in addition, to suppress Title III wiretap evidence derived from interception of a cellular phone based on an alleged violation of the sealing requirements of Title 18, United States Code, Section 2518(8)(a). As the Government explained in its pre-hearing brief and at oral argument held on June 3, 2011, Rodriguez's motions are meritless and should be denied. This brief addresses solely the points that Rodriguez raised in his June 17, 2011 supplemental memorandum of law, and

2

otherwise incorporates all arguments and discussions of fact previously made.

I.  **RODRIGUEZ LACKS STANDING TO MOVE TO SUPPRESS THE *FELIZ* WIRETAP BASED ON AN ALLEGED SEALING WITH RESPECT TO THE NYSP WIRETAP**

The Second Circuit's decision in *United States* v. *Fury*, 554 F.2d at 522, 526 (2d Cir. 1977), is dispositive: Rodriguez lacks standing to challenge any defect in the sealing of the New York State Police ("NYSP") wiretap, on which Rodriguez was neither a target nor intercepted, and which was used, in part, to obtain probable cause to obtain the Feliz wiretap,[1] on which Rodriguez was intercepted.

In *Fury*, Thomas Fury, but *not* John Quinn, was intercepted on the Schnell wiretap, which was then improperly sealed. *Id.* at 524-25.  The Government used conversations intercepted on the Schnell wiretap to spin to a wiretap on Thomas Fury's telephone (the "Fury" wiretap). *Id.* Both Fury and Quinn were intercepted on the Fury wiretap. *Id.* at 525.

Both Quinn and Fury challenged the use of the sealed Schnell wiretap to obtain the Fury wiretap, expressly stating that one ground for the challenge was "that the recordings of conversations seized during the wiretap were not timely sealed."

---

[1] Details on the authorizations of the NYSP and Feliz wiretaps are set forth in the Government's May 2, 2011 memorandum in opposition to Rodriguez's suppression motion, at pages 3-4.

3

*Id.* The Second Circuit held, without qualification, that Quinn did not have standing to challenge the Schnell wiretap's sealing defects – or any wiretap derived from the Schnell wiretap – because he was not intercepted on the Schnell wiretap:

> Quinn was not named in the Schnell wiretap order and he was not a party to any conversation intercepted during that tap. Since he is not an "aggrieved person," he cannot challenge the Schnell tap directly by seeking to suppress information derived from it. In consequence, *he cannot challenge it indirectly by seeking to suppress evidence from the Fury tap on the ground that the Fury tap was authorized in part on the basis of information from the Schnell tap.*

*Id.* at 526 (emphasis added). By contrast, Quinn did have standing "to challenge the Fury tap on grounds unrelated to the Schnell tap, since his conversations were overheard during that tap." *Id.*[2]

Rodriguez is in the exact same position as Quinn was in *Fury*. Rodriguez was not intercepted on the NYSP wiretap, and thus lacks standing to challenge any alleged defect in that wiretap, whether directly or "indirectly by seeking to suppress evidence from the [Feliz] tap on the ground that the [Feliz] tap was authorized in part on the basis of information from the [NYPS] tap." *Id.* Rodriguez may "challenge the [Feliz] tap on

---

[2] The *Fury* Court ultimately reached the sealing issue because Fury also moved to suppress, and he had standing to challenge the improper sealing of the Schnell wiretap. *United States* v. *Fury*, 554 F.2d at 526.

grounds unrelated to the [NYSP] wire, since his conversations were overheard during that tap." *Id.*[3] In short, *Fury* ends the discussion.

Rodriguez relies on the Supreme Court's opinion in *United States* v. *Ojeda-Rios*, 495 U.S. 257 (1990), and the First Circuit's decision in *United States* v. *Mora*, 821 F.2d 860 (1st Cir. 1987), to support his argument that he has standing to challenge the NYSP wiretap. Neither *Ojeda-Rios* nor *Mora*, however, addressed the issue of standing. In *Ojeda-Rios*, the Supreme Court held that a delay in sealing a wiretap, absent a satisfactory explanation form the Government for such delay, requires suppression of the wiretap in question. *United States* v. *Ojeda-Rios*, 495 U.S. at 264-65. The Court distinguished between the explicit exclusionary remedy in Title 18, United States Code, Section 2518(8)(a), which governs sealing violations, and the "general suppression remedy" found in Title 18, United States Code, Section 2518(10). *Id.* at 260 n.1. Although Rodriguez has attempted to imply that *Ojeda-Rios* somehow overturned *Fury*, it did no such thing. To the contrary, as the

---

[3] Rodriguez has, in fact, attacked the Feliz wiretap on independent grounds: namely an attack on the "alternative means" discussions in the Feliz wiretap applications. The Government explained in its first brief why that attack fails; Rodriguez declined to address the issue either in oral argument or in his subsequent papers.

Supreme Court explicitly recognized, *Ojeda-Rios confirmed* the Second Circuit's prior holdings that suppression was an appropriate remedy. *Id.* at 262. Indeed, even *Fury* recognized that, if a defendant had standing and demonstrated a failure to seal without a satisfactory explanation, the district court could suppress the use of the intercepted conversations at trial. *Fury*, 554 F.2d at 531.

However, neither *Ojeda-Rios* nor *Mora* addressed who had standing to object to the use of an improperly sealed wiretap, particularly where such wiretap was not admitted into evidence at trial. Indeed, the word "standing" does not even appear in either opinion. The Supreme Court has not addressed the issue of whether the standing provision in Section 2518(10) governs Section 2518(8). The Second Circuit, however, directly addressed that issue in *Fury*, and that holding is binding on the Court in this case.

Rodriguez also relies on the District Court opinion in *United States* v. *Ricco*, 421 F. Supp. 401 (S.D.N.Y. 1976) to support his standing argument. That argument fails for several reasons. First, *Ricco* does not stand for the proposition cited by Rodriguez. In *Ricco*, the Government relied on the improperly sealed O'Donnell wiretap to obtain a wiretap on Mengrone's telephone. Ricco was intercepted on the Mengrone wiretap, but not on the O'Donnell wiretap. The Court found:

6

>since Ricco was neither a subject of nor a party to the O'Donnell wiretaps, he therefore is not an 'aggrieved person,' with respect to the taps under the federal statute and thus, lacks standing to assert claims based on their illegality. The Government is correct in its assertion that Ricco lacks standing to dispute the authorization to conduct the Mengrone wiretaps on the ground that the O'Donnell taps were illegal. No legally protected interest of Ricco's was injured by the procedural defects in the O'Donnell wiretap, which provided ample probable cause for the issuance of the Mengrone authorization.

421 F. Supp. at 404-405 (internal citations omitted). Here, the NYSP wiretap is akin to the O'Donnell wiretap in *Ricco*, and the Feliz wiretap is akin to the Mengrone wiretap in *Ricco*. Just as Ricco lacked standing to dispute any defects in the O'Donnell wiretap, as he was not intercepted thereupon, Rodriguez here lacks standing to dispute any defects in the NYSP wiretap. In short, the District Court opinion in *Ricco* set forth the exact same standing rule as was established in *Fury*.[4] The Second Circuit agreed with this rule not only in *Fury*, but in its review

---

[4] The portion of Ricco relied upon the defendant refers to Ricco's standing to challenge improperly sealed conversations on the Mengrone wiretap, not on the O'Donnell wiretap, which the Court found to be permissible, because: (1) Ricco had been intercepted on the Mengrone wiretap; and (2) the Government sought to introduce those interceptions at trial against Ricco. *Ricco*, 421 F. Supp. at 405-06. Here, (1) Rodriguez was *not* intercepted on the NYSP wiretap; and, consequently, (2) the Government does *not* seek to introduce interceptions on the NYSP wiretap against Rodriguez at trial.

of *Ricco*, noting that the unsealing procedures set forth by Title 18, United States Code, Section 2518(8)(a) (which procedures Rodriguez argues were violated) are applicable only where the "intercepted communications might be disclosed *at trial*." *United States* v. *Ricco*, 566 F.2d 433, 436 (2d Cir. 1977).[5]

In sum, because Rodriguez was not intercepted (or even discussed) on the NYSP wiretap, he lacks standing to challenge any procedural defects with respect to the NYSP wiretap, particularly where he is only attacking their derivative use to establish probable cause for the *Feliz* wiretap.

## II. WIRETAP APPLICATIONS ARE NOT TESTIMONIAL PROCEEDINGS GOVERNED BY SECTION 2517(3), AND THUS ARE NOT SUBJECT TO THE EXCLUSIONARY REMEDIES OF 2518(8)(a)

The exclusionary rule provided for in Section 2518(8)(a) applies only to the use of improper use of sealed wiretap recordings in "testimonial proceedings" under Section 2517(3). *See United States* v. *Carson*, 52 F.3d 1173, 1186 (2d Cir. 1995).

---

[5] Rodriguez cites to a treatise for the proposition that, irrespective of traditional standing requirements, "courts have held that any defendant, even one whose conversations were not intercepted, may assert noncompliance with the sealing provision as a basis to suppress the recordings and derivative evidence." Clifford S. Fishman & Anne T. McKenna, *Wiretapping and Eavesdropping: Surveillance in the Internet Age* § 19:7 (3d ed. 2009). The only federal court actually cited by the treatise, though, was the *Ricco* court, *see id.* n. 6, which, as described above, does not support Rodriguez's argument. The treatise, moreover, failed to acknowledge *Fury*, which is directly on point.

8

The Second Circuit has made clear that wiretap applications presented to courts for review are not "testimonial proceedings," under Section 2517(3), and that therefore law enforcement officers may use sealed wiretap materials in order to gain authorization for additional wiretaps pursuant to Title 18, United States Code, Section 2517(1) and (2).

The Second Circuit explained the rule in the recent case of *United States* v. *Amanuel*, 615 F.3d 117 (2d Cir. 2010):

> It is subsections (1) and (2) [of Title 18, United States Code, Section 2517] that provide the authorization to use intercepted electronic communications for the purposes of establishing probable cause in support of, *inter alia*, ***subsequent wiretap warrants*,** other search warrants, and arrest warrants.

615 F.3d at 128 (emphasis added). The Court explicitly held that wiretap applications are governed by Subsections (1) and (2), and not by Subsection (3), and thus not subject to the sealing requirements of Section 2518(8)(a). Moreover, in *Amanuel*, the Court held that the Government could introduce at trial evidence that was obtained through warrants based on improperly sealed pager wiretaps. *Id.* at 129. *Amanuel* is dispositive.[6] *Cf.*

---

[6]   Rodriguez's attempt to distinguish *Amanuel* by noting that the Court precluded use of improperly sealed wiretaps in "any . . . proceeding," and arguing that a wiretap application is a "proceeding," *see* Rodriguez Br. at 13 n.2, fails, given that the *Amanuel* Court explicitly held that a "wiretap warrant" is governed by Sections 2517(1) and (2), and not a "proceeding" under 2517(3). 615 F.3d at 128.

*United States* v. *Donlan*, 825 F.2d 653 (2d Cir. 1987) (holding that affidavits under oath in support of search warrants and arrest warrants are governed by Subsections (1) and (2)).

In addition to *Amanuel*, *Fury* also directly supports the proposition that wiretap applications are not testimonial proceedings governed by Section 2517(3).  In *Fury*, the Court held that even though the Schnell wiretap was improperly sealed, and thus could not be introduced as evidence on its own against Fury, the Government permissibly relied upon the Schnell wiretap to obtain probable cause for the Fury wiretap, which usage was permissible under Sections 2517(1) and (2).  *Fury*, 554 F.2d at 531-32.  The *Fury* Court credited the Government's argument that, if such use was not permitted, "otherwise, police officers operating an ongoing wiretap would be unable to use the fruits of that tap simply because the tap had not yet ended and the tapes had not yet been sealed."  *Id*. at 532.  Indeed, if Rodriguez were correct, the Government would have to unseal an ongoing wiretap in order to use it in order to establish probable cause for a reauthorization or spin-off wiretap.

Rodriguez attempts to distinguish *Amanuel, Fury*, and *Donlan*, 825 F.2d 653 (2d Cir. 1987), by arguing that these cases concerned "motions by defendants to suppress evidence derived from information obtained from improperly sealed or unsealed tapes, rather than ruling on whether the contents of the unsealed

10

recordings could be used as testimony.  By this motion, Mr. Rodriguez seeks directly to strike the unlawful testimonial use of the unsealed contents of recordings from the sworn affidavit on which the Feliz wiretap order was based." (Rodriguez Supp. Mem. at 12 n.2.)  However Rodriguez frames his motion, however, he is seeking to do exactly what the movants sought to do in *Amanuel*, *Fury*, and *Donlan*: suppress one wiretap (or search warrant) on the basis of an alleged sealing violation in a prior wiretap warrant.  Accordingly, his motion should be denied for exactly the same reasons as in *Amanuel*, *Fury*, and *Donlan*.[7]

---

[7] Rodriguez asserts that the Government "has not produced the originally sealed [NYSP wiretap] recordings from the New York State Court." (Rodriguez Supp. Mem. at 13 n.3.)  This is false.  The Government produced those recordings to the parties on May 21, 2009.  Rodriguez also seeks a hearing based on the assertion that "[i]t remains unknown how Agent Melodick cited to" the NYSP wiretap.  As the Court is well aware, such an assertion does not come close to the standard for a *Franks* hearing, which requires an affidavit by someone with personal knowledge of the events sworn to therein, which affidavit raises an actual issue of fact that would, if true, demonstrate bad-faith activities on behalf of the government agent.  *See United States* v. *Correas*, 491 F.3d 151, 155 (2d Cir. 2005) (to warrant suppression of a wiretap on the basis of false statements or omissions in an affidavit, the defendant must show: "(1) that the inaccuracies were the product of a Government agent's deliberate falsehood or reckless disregard for the truth rather than innocent mistake, and (2) that, after setting aside the falsehoods, what remains of the warrant affidavit is insufficient to support [the district court's] finding"); *Franks* v. *Delaware*, 438 U.S. 154, 155 (1978) (in order to merit a hearing on such an issue, the defendant must make a "substantial preliminary showing" of both elements); *United States* v. *Gillette*, 383 F.2d

11

**III. CONCLUSION**

For the reasons stated above, as well as in the Government's initial pretrial brief and at oral argument on June 3, 2011, defendant Marco Rodriguez's motions should be denied without a hearing.

Dated:   New York, New York
         June 24, 2011

                                    Respectfully submitted,

                                    PREET BHARARA
                                    United States Attorney

                              By:   _____/s/_____
                                    NOLA B. HELLER
                                    MICHAEL D. MAIMIN
                                    Assistant United States
                                    Attorneys
                                    (212) 637-2631/2238

---

         843, 848 (2d Cir. 1967) (finding defense counsel's
         affidavit submitted in support of a suppression motion
         insufficient to raise an issue of material fact).