LAW OFFICES OF

# ALLAN P. HABER, ESQ.

111 Broadway, Suite 701
New York, New York 10006

OF COUNSEL                                                          TELEPHONE: 212-233-4411
STEPHANIE CARVLIN, ESQ.                                             FACSIMILE:   212-374-1506
GEORGES G. LEDERMAN, ESQ.                                           E-MAIL: allan@haberesq.com

February 6, 2013

Honorable George B. Daniels
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York   10007

Re: <u>United States v. Louinsky Minier</u>
    S1 09 Cr. 195 (GBD)


Dear Judge Daniels:

Louinsky Minier, the defendant in the above-captioned case, is scheduled to be sentenced by this Court on February 14, 2013. I write to provide Your Honor with information that is relevant to your sentencing decision.

### BACKGROUND

On February 19, 2007 Louinsky Minier was arrested in New York County for Murder in the Second Degree, Assault in the First Degree and related charges.  On May 1, 2008 he was sentenced after pleading guilty to Attempted Assault in the First Degree, a Class C Felony.  The sentence imposed by the Court was 7 years imprisonment followed by 5 years of Post Release Supervision.  He has remained in jail since his arrest on February 19, 2007.

On August 6, 2010, while he was serving his state sentence Louinsky Minier was released to federal custody via a writ of habeas corpus ad prosequendum. The victims of the

attempted assault, which he pled to in state court, were the same victim and the same offense charged in the above indictment. (Pre Sentence Investigation Report, hereinafter "PSI", Page 38, ¶236.)  As a consequence he should receive credit for time served over the last 6 years, minus 4 days.  On February 19, 2013 he will have been incarcerated exactly 6 years.

On May 22, 2012, Louinsky Minier pled guilty to the following Racketeering Acts summarized in Count One, pursuant to 18 U.S.C. §§1961 and 1962(c) of the Indictment: Racketeering Act One, Conspiracy to Murder and Attempted Murders of Skeilin Camacho, a/k/a "KK"; Racketeering Act Two, Murder of Roy Abreu; Racketeering Act Four, Narcotics Trafficking Conspiracy; and Count Twenty Four, Causing the Death of a Person During a Drug Conspiracy by Discharging a Firearm, pursuant to 18 U.S.C. §924(j). Under the terms of the plea agreement the Government and Mr. Minier agreed to an initial applicable Guidelines offense level of 41 minus 3 points for acceptance of responsibility for an adjusted Guidelines Offense Level of 38 in Criminal History Category III with a Guidelines exposure of 292-365 months imprisonment.

Unfortunately, both the Government and counsel miscalculated by 1-Unit when calculating the various Groups in the Guidelines sentencing provisions.  Both the government and counsel believed at the time that a potential sentence, within the Guidelines range mentioned above, minus time served in state prison and during the execution of the writ, was an appropriate sentence.

## THE PROBATION REPORT

Counsel received the preliminary draft of the PSR, in mid August 2012.  The PSI Guidelines calculation was one level higher than the calculation in the plea agreement. Probation found, and we concur that their finding was correct, that the adjusted Guidelines calculation was 39 in Criminal History Category III for an adjusted Guidelines sentence

exposure of 324-405 months imprisonment.  (PSI, P.36, ¶221.)

During the probation interview Louinsky Minier provided the context in which the shooting occurred.  After Skeilin Camacho, a/k/a "KK" and Roy Abreu, a/k/a "Spider", made several attempts to kill Louinsky Minier by shooting at him in the Washington Heights area he fled to New Jersey in an attempt to avoid confrontation.  While he was in New Jersey his wife and child, still living in the New York, were confronted and threatened by "KK" and "Spider" who told her to "let him know we know where you and your child life."  This confrontation precipitated the defendant's return to New York because he feared for the life of his wife and child.  Shortly thereafter the incident occurred that gave rise to the instant charges.  (PSI, Page 32, §§181-182O)

## THE §3553(a) FACTORS

Following the United States Supreme Court's decisions in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005); *Kimbrough v. United States*, 552 U.S. 85, 128 S.Ct. 558 (2007)(District Court may impose a sentence that varies from the Guidelines based entirely on the Court's view that the Guidelines range doesn't properly reflect the §3553(a) factors); *Gall v. United* States, 552 U.S. 85, 128 S.Ct. 586 (2007)("extraordinary circumstances" not required to impose non-guideline sentence); *Rita v. United States*, 551 U.S. 338, 127 S. Ct. 2456, 2465 (2007)(while appellate court may apply presumption that guideline sentence imposed by district court was reasonable, "sentencing court does not enjoy the benefit of a legal presumption that the Guidelines should apply."), and the Second Circuit's interpretation of *Booker* in *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), this Court's sentencing decision must be governed by the factors listed in 18 U.S.C. §3553(a). Those factors include the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the

Guidelines range and any applicable Guidelines Policy Statements, the need to avoid sentencing disparities and the need to provide restitution to the victim.

This Court must consider all of the §3553(a) factors to derive a sentence that is "sufficient, but not greater than necessary," to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the public and to provided the defendant with needed educational or vocational training, medical care or other correctional treatment. *See United States v. Ministro-Tapia*, 470 F.3d 137 (2d Cir. 2006) (analyzing the "parsimony clause" of 18 U.S.C. §3553(a)).

1. **The Guidelines Range and Policy Statements**

While this Court is no longer bound to impose a Guidelines sentence, the Second Circuit has directed District Courts to "consider" the Guidelines, and in "order to fulfill this statutory duty to 'consider' the Guidelines, a sentencing judge will normally have to determine the applicable Guidelines range." *Crosby*, 397 F.3d at 111. Thus, one step in deciding what sentence is appropriate for Mr. Minier is to calculate the Guideline range for his offense. However, there is no presumption that the Guidelines provide the "correct" sentence, and this Court may vary from the Guidelines based entirely on the Court's view that the Guidelines range doesn't properly reflect the §3553(a) factors. *See Kimbrough v. United States,* 552 S. Ct. at 109 (2007).

Should the Court impose a guidelines sentence we agree that Probation properly calculated the guidelines range at 42, minus a 3-point reduction for acceptance of responsibility for a total adjusted Guidelines offense level of 39 with a Guidelines range of 324-405. (PSR ¶221.)

2. **The Nature and Circumstances of the Offense**

Mr. Minier has been convicted of serious charges and based on his plea agreement is

subject to a sentence of 292-365 months imprisonment, however, under the Guidelines calculations he is  is subject to a potential sentence of 324-405.  Although he admitted his culpability in the murder of Roy Abreu and the attempt murder of Skeilin Camacho both of these acts were perpetuated by a robbery that occurred at his grandmothers home and several prior attempts by both of these individuals to shoot him which resulted in Louinsky Minier's flight to New Jersey in order to avoid further confrontation with these two individuals.  It wasn't until "KK" and "Spider" threatened his wife and child that he returned to New York in order to help protect them.  Both Roy Abreu and Skeilin Camacho were hardened criminals who committed multiple robberies and other violent crimes in the area of Washington Heights in New York City. They were known to carry guns and were not afraid to use them.

    3. **Mr. Minier's History and Characteristics**

        a. **Mr. Minier's Background**

As the PSR indicates, Mr. Minier's biological father and mother were drug dealers who served a substantial amount of time in various prisons.  His mother admitted to using drugs throughout her pregnancy with Louinsky.  She was ultimately deported and is currently living in the Dominican Republic.  His biological brothers have all been involved in selling narcotics and various acts of violence.  His role models leave much to be desired.  He is 27 years old and has been incarcerated since he was 21 having spent the last 6 years in jail on this offense. He has accepted responsibility for his actions and wishes to get on with his life in a more positive way. Prior to this case he has never served a substantial sentence in prison.

    4. **The Need For The Sentence Imposed**

        A)    To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.
        B)    To afford adequate deterrence to criminal conduct;
        C)    To protect the public from further crimes of the defendant; and

        D)        To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. (18 USC §3553(a)).

A sentence of 220 months satisfies all the criteria cited in 3553(a). Considering that the individuals were stalking the defendant and his immediate family adds an element of mitigation not considered by the Guidelines Commission. It was only after they were threatened that he returned to New York in order to protect them. Under these circumstances a sentence of 220 months imprisonment reflects the seriousness of the offense and affords adequate deterrence to criminal conduct. The length of time he will serve in prison also serves to adequately protect the public from further crimes. It also provides an opportunity for him to pursue educational and vocational aspirations.

The Court should also consider that under the §3553(a) analysis Louinsky Minier's criminal history category might be over-represented to some degree. Although legally he has 4 Criminal History Points, 2 of them were imposed for conduct that occurred in 2004 for a Class B Misdemeanor for which he served 5 Days of Community Service and a Conditional Discharge and the underlying offense was for relevant conduct to this case. (PSI ¶233-234.) Under New York State Law the maximum sentence that may be imposed for a B Misdemeanor is 90 days.

### 5. Both Probation And the Government Agree That His State Case Is Relevant Conduct To The Instant Case and Therefore Should Run Concurrently To Both the Served and Un-Served Portion of His State Sentence.

Section §5G1.3 of the Federal Sentencing Guidelines provides direction for the imposition of a sentence when a defendant is subject to an un-discharged portion of a related or term of imprisonment. The analysis requires the elimination of each inapplicable subsection, beginning with subsection (a) until the appropriate subsection is identified.

Subsection (a) applies only if the instant offense was committed while Mr. Minier was

serving a term of imprisonment, "including work release, furlough, or escape status", when the crime occurred.  Because the instant offense was not committed under these circumstances subsection (a) does not apply.

Subsection (b) applies when two requirements are met:  1) the term of imprisonment resulted from another offense that was relevant conduct to the instant offense under the provisions of (a)(1), (a)(2), or (a)(3) of §1B1.3; and 2) and the relevant conduct was the basis for an increase in the offense level of the instant offense under Chapter Two (offense conduct) or Chapter Three (adjustments).  Because the prior offense is relevant conduct to the instant offense, and was imposed under the instant offense, §5G1.3(b) does apply.  Probation agrees that the sentence should be imposed as follows:

> 1)  the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons ; and
> 2)  the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

5G1.3(b)

Under the Dictates of 5G1.3(b) Louinsky Minier should receive credit for 6 years minus 4 days incarceration while under state jurisdiction because he is in federal custody pursuant to a writ and is currently not receiving credit for time spent in a federal jail.  He is also not receiving "good time" credit.

Other relevant circumstances that the Court should consider are:

### 6. Impact of The Defendant's Age on Recidivism

The defendant is currently 27 years old and he is facing at least an additional 18 years imprisonment.  Even with time-off for good behavior he will still serve approximately 16 more

years of incarceration. He will be approximate 43 years old when he becomes eligible for release, much older and therefore much less likely to commit another crime in the future. (See National Institute of Justice Study on Recidivism.) His age at the time of sentencing and at the time of his projected release are factors indicating that it is unlikely he will commit additional crimes in the future. After *Booker,* many courts have considered a defendant's age as a factor for sentencing below the guidelines. See, *Simon v. United States* 361 F. Supp.2d 35, 48 (E.D.NY March 17, 20005); *United States v. Thomas,* 360 F. Supp. 2d 238, 243 (D. Mass. 2005); *United States v. Nellum,* 2005 U.S. Dist. Lexis 168 (N.D. Ind. February 3, 2005). According to the Sentencing Commission, for defendants over forty (40), the risk of recidivism drops dramatically, lessening the need to protect the public from further crimes of the defendant under 18 U.S.C. §3553(a)(2)(C). In the United States Sentencing Commission report referred to above, the Commission noted that "recidivism rates decline relatively consistently as age increases from 35.5% under age 21 to 9.5% over age 50". Because of the defendant's anticipated rehabilitation, his expression of remorse, his clear acceptance of responsibility and his age at release, it is unlikely that he will commit crimes upon his release from prison, and therefore a sentence of no more than 220 months is sufficient to achieve the goals of sentencing.

### 7. The Kinds of Sentences Available

Mr. Minier is charged with a Conspiracy to Commit Murder In Aid of Racketeering and Murder while engaged in a drug related crime. The Court has multiple options to consider in order to reach a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in 3553(a). One option would be to sentence him to a non-Guidelines sentence consistent with the government's belief and his plea agreement that he should receive a sentence within the Guidelines range of 292-365, minus approximately 6 years of time already

served on the instant offense. A second option for Court to consider is to reduce his sentence by an additional 325 days of "good time" which he will never get credit for while in state custody. Had he been sentenced to serve his entire sentence in a federal facility he would have received good time for the last 6 years. A third option would be to impose a Guidelines sentence consistent with the PSI calculations but we feel this would be excessive and unfair given the facts of this case.

## CONCLUSION

## THE APPROPRIATE SENTENCE

Section 3553(a) requires this Court to consider all the factors reviewed above and ultimately derive a sentence "sufficient, but not greater than necessary," to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the public and to provide the defendant with needed educational or vocational training, medical care or other correctional treatment. These goals can be realized by sentencing him to the 292 months imprisonment to run concurrently with the undischarged portion of his New York State sentence minus 6 years he has already served while under New York State jurisdiction for a total of 220 months. Any additional time is unnecessary to satisfy the dictates of 18 U.S.C. §3553(a).

Respectfully submitted,


APH: fms
cc: AUSA Nola Heller